## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN MARITIME OFFICERS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  05-CV-1343 (RMC) |
| ) | |
| JEROME E. JOSEPH ) | |
| ) | |
| Defendant. ) | |
| ) | |

### DEFENDANT'S MOTION TO DISMISS

Defendant Jerome E. Joseph ("Joseph"), by his attorneys, files this motion to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(1) and 12(b)(6).  Joseph's motion seeks dismissal, under Rule 12(b)(6), of the previously unpled and unconsented to breach of fiduciary duty claim the District of Columbia Superior Court, *sua sponte*, added to this case on July 5, 2005, after the close of all of the evidence in this case and after the Superior Court permitted plaintiff American Maritime Officers ("AMO"), on Friday, July 1, 2005, to file an amended complaint on its sole District of Columbia Uniform Trade Secrets Act claim, which made no reference to any breach of fiduciary duty claim.  Simply stated, federal statutory labor law preempts the claim the Superior Court judge, *sua sponte*, injected into this case at the eleventh hour; likewise, the District of Columbia Uniform Trade Secrets Acts preempts the new claim.  Defendant also seeks dismissal, under 12(b)(1), of AMO's representational damages claims on behalf of its members, primarily on the ground that AMO lacks standing to bring such claims.

For the preceding reasons and those stated in the accompanying memorandum of points and authorities, Defendant Jerome E. Joseph requests that the Court grant Defendant's Motion To Dismiss.

82820/F/2

**ORAL HEARING REQUESTED**

Dated:  July 11, 2005                                          Respectfully submitted,

                                                               **JEROME E. JOSEPH**

                                              By:      /s/  Michael J. Schrier
                                                       Raymond C. Fay #188649
                                                       Michael J. Schrier #444693
                                                       BELL, BOYD & LLOYD Pᴌʟᴄ
                                                       1615 L Street N.W., Suite 1200
                                                       Washington, D.C. 20036
                                                       (202) 466-6300
                                                       Attorneys for Defendant

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN MARITIME OFFICERS      ) | |
|                   ) | |
|       Plaintiff,     ) | |
|                   ) | No.  05-CV-1343 (RMC) |
|       v.            ) | |
|                   ) | |
| JEROME E. JOSEPH          ) | |
|                   ) | |
|       Defendant.   ) | |
|                   ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant Jerome E. Joseph ("Joseph"), by his attorneys, submits this memorandum in support of his motion to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(1) and 12(b)(6).  Joseph's motion seeks dismissal under Rule 12(b)(6) of the previously unpled and unconsented to breach of fiduciary duty claim the Superior Court, *sua sponte*, added to this case after the close of all of the evidence in this case and after the Superior Court permitted the American Maritime Officers ("AMO"), on Friday July 1, 2005, to file an amended complaint on its sole District of Columbia Uniform Trade Secrets Act claim, which made no reference to any breach of fiduciary duty claim.  Simply stated, the District of Columbia Uniform Trade Secrets Act, as well as at least two separate federal labor statutes expressly preempt the very claim the Superior Court, *sua sponte*, injected into this case at the eleventh hour.

The newly added common law breach of fiduciary duty claim, added over the objection of the defendant and in clear violation of Super. Ct. Civ. R. 15(b) (and Fed.R.Civ.Pro. 15(b)), is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), (29 U.S.C. §§ 1101-1113, 1132, 1144), the Labor Management Relations Act ("LMRA") (29 U.S.C. § 185), and the District of Columbia Uniform Trade Secret Act ("UTSA") (D.C. Code Ann. § 36-

407(a)).  The new claim is also foreclosed by the Labor Management Reporting and Disclosure Act ("LMRDA") (29 U.S.C. § 501).  Defendant also seeks dismissal under Rule 12(b)(1) of AMO's representational damages claims on behalf of the members, primarily on the ground that AMO lacks standing to bring such claims.

## I.    BACKGROUND

On August 9, 2002, AMO filed a single count complaint against Joseph for trade secret misappropriation under the District of Columbia Uniform Trade Secret Act ("UTSA") (Exhibit 1).[1]  The original, verified, complaint made no mention of any breach of fiduciary duty claim and limited the claims and relief sought to the UTSA.  Throughout the nearly three year history of litigating this case, AMO never once pleaded or argued for any breach of fiduciary duty claim.  On October 6, 2004, the Superior Court entered the Pretrial Order in this case in which the "Court adopt[ed] the Joint Pretrial Statement as the Pretrial Order" (Exhibit 2 at 2).

AMO claimed trade secret status as to (1) a document called a "contribution rate sheet" used by Mr. Joseph and others as a guide to assist in collective bargaining on behalf of AMO, (2) the "confidential contribution letter," which described the employer's contributions to the various AMO employee benefit plans and which was incorporated into the collective bargaining agreements between AMO and shipping companies, and (3) alleged non-public details concerning the financial health and funding needs of AMO employee benefit plans.  AMO's contentions were described in the Joint Pre-Trial Statement incorporated into the pretrial order as follows (Exhibit 3 at 2-3):

---

[1]    Exhibits are attached to the accompanying declaration of Raymond C. Fay.

*Plaintiff's Statement of Case*

Plaintiff, American Maritime Officers "(AMO"), is a national union representing licensed maritime officers that serve on merchant marine vessels operating under the U.S. flag.  It alleges in this case that the defendant, Jerome Joseph ("Joseph"), was a long-time high-ranking officer and fiduciary for the members of AMO and, while at AMO, had access to confidential, competitively sensitive information that AMO utilizes and relies upon as part of its negotiation of contracts with employers for its members.  AMO contends that, while serving as fiduciary for AMO, Joseph played a leading role in developing and using AMO's "contribution rate sheet" and its underlying bidding formula, which he and AMO have used in negotiating fringe benefit levels for its members.  It also claims that Joseph had direct access to, and in-depth knowledge of, non-public details regarding the financial health and funding needs of AMO members' fringe benefit Plans and the contributions payable into those Plans by employers.  AMO contends that, after departing from AMO and then acting as a consultant for AMO's archrival competitor, MEBA, Joseph has, through his actions, both threatened to misappropriate and actually misappropriated this sensitive information.  AMO contends that Joseph has engaged in misappropriation of its trade secrets in two ways:  (1) through his unauthorized retention and possession of AMO documents embodying trade secrets after he left AMO; and (2) through his use for MEBA of AMO trade secret information during the course of his consulting activities for MEBA.

AMO seeks both injunctive relief and damages against the defendant.  With respect to injunctive relief requested, AMO seeks to compel the return by Joseph of AMO documents he still has in his possession, and other injunctive relief that AMO contends is necessary to protect the benefit levels and jobs obtainable by AMO members from the threat posed by the defendant.  According to the Plaintiff, this would include, at a minimum, an injunction prohibiting the defendant from utilizing for the benefit of MEBA (or any other entity) any trade secret information he gained as an officer and fiduciary for AMO's membership.  AMO also seeks damages against Joseph for his activities for MEBA to date to compensate AMO and its members who, AMO contends, were forced to accept lower benefit levels in recent contract bids as a result of the defendant's use of AMO trade secret information for MEBA.

AMO's trade secret allegations were further described in a companion case, *American Maritime Officers v. Kelly*, Case No.: 02-019945 CACE 21 (Broward Cy. Fla. Cir. Ct.).  In its January 29, 2003 Order denying a temporary injunction in that case, the Florida court stated (Exhibit 4 at 2-3):

At the heart of the AMO's case is its contention that its wage and fringe benefit information is a trade secret. AMO contends that its "confidential contribution letter" and its "rate sheet" constitute specialized information which falls under the coverage of Florida's trade secret statute. The "confidential contribution letter" simply sets forth an agreement with an employer as to how many vacation days an employee will be entitled to and then sets forth contribution rates to the various fringe benefit funds. Several examples were submitted into evidence and each had different vacation days and contribution rates. The "rate sheet" is a list of vacation day entitlements ranging from 0 to 30, and the contribution that go with each vacation entitlement.

AMO admits that there are a number of places that the information contained in the confidential letter can be obtained, such as from the various trust funds to which contributions are submitted as well as off of the official website of the Military Sealift Command, an official U.S. Navy website. AMO also agrees that Kelly had access to this information in his capacity as a trustee of the various trust funds to which the contributions were submitted, just as other union and employer trustees would have access to the same. Notwithstanding the availability of the "confidential contribution letters" AMO insists that the "rate sheet" provides all the information needed to know what its agreements are with each of its employers, simply by determining how many vacation days an employee gets. It is therefore the rate sheet with its formula based on vacation days that AMO claims is the trade secret. AMO, through its witness Mr. Bethel, produced two examples of contribution agreements. However, when comparing the rate sheet to the agreements, there were variations. Thus the rate sheet does not necessarily provide the key to each employer agreement.

In the D.C. Superior Court, the contribution rate sheet was placed under seal. Some of the confidential contribution letters were placed under seal and some were not. Those that appeared on government websites (the Department of the Navy's Military Sealift Command and the Department of Commerce's Maritime Administration) as part of Department of Labor wage determinations under the Service Contract Act, 41 U.S.C. §§ 351-358, were not placed under seal. Specimen public confidential contribution letters dated June 1, 2003 and June 1, 2004 are contained in defendant's Trial Exhibit 64 (Exhibit 5 herein, posted on the Military Sealift Command's website http://www.Procurement.msc.navy.mil/Contract/rfpfiles/N00033-04-R-5340/Amendment00001.zip, RFP N00033-04-R-5340, Amend. 1; Posted 12/10/2004). As noted in Appendix A to the Memorandum of Understanding, published on the Military Sealift

Command website as a part of that group of documents (the Memorandum of Understanding is that part of the collective bargaining agreement for which AMO never has claimed confidentiality), § III.F(1): "The Company agrees to become and/or remain party to the various benefits plans and entities and to make contributions thereto in accordance with the Confidential Contribution Letter attached and made a part hereof."

By order following the status hearing of April 28, 2005, the Superior Court amended the Pretrial Order and reset the trial date (Exhibit 6). The Order amended the Pretrial Order "to allow the plaintiff to proceed in a representational capacity on behalf of its members (as well as in a personal capacity on its own behalf) as to the damage claim asserted herein." Pursuant to that order and after a further invitation from the Superior Court, AMO filed an Amended Complaint on July 1, 2005 (Exhibit 7). The Amended Complaint was in all respects identical to the original complaint, except to note that AMO sought both damages and injunctive relief on behalf of its members, as well as on behalf of itself. Defendant answered the Amended Complaint in this Court on July 11, 2005 (Exhibit 8).

Prior to trial, the Superior Court entered a Supplement Pretrial Order on June 9, 2005 (Exhibit 9). With respect to the nature of the case, the Supplemental Pretrial Order provided that, with the exception of the addition of the representational damages claim, the scope of the case remained as stated in the original pretrial order. The Court stated (Exhibit 9 at 1, emphasis added):

> The nature of the action is described in the parties' original Joint Pretrial Statement. The claims and defense of the parties are set forth in the original Joint Pretrial Statement and the supplemental statements filed herein. *No other claims or defenses will be entertained at trial absent exceptional cause.*

The trial commenced on June 28, 2005.  On July 1, 2005, as noted above, AMO filed an Amended Complaint limited to the original UTSA claim, but adding language concerning suit in a representational capacity on behalf of AMO members for the damages claim.

Late in the afternoon on July 5, 2005, after the close of all of the evidence, and during the jury instruction conference with counsel, the Superior Court first informed the parties of its intention to add a new, previously unpled breach of fiduciary duty claim to the case and to submit it to the jury.  The Court asserted that it was acting pursuant to Super. Ct. Civ. R. 15(b) to make the pleadings conform to the evidence.  The Court also asserted that its June 9, 2005 supplemental pretrial order was notice to the parties of the Court's intent to add the new breach of fiduciary duty claim and submit it to the jury.[2]  The Court also stated that Joseph consented to the addition of this new breach of fiduciary duty claim by filing a response to the Court's June 9th order, despite the fact that there was absolutely no notice of what the Court intended to do with respect to adding new claims to this case.  The Court expressly stated that the new breach of fiduciary duty claim is based, at least in part, upon 29 U.S.C. § 501.  (Fay Decl., ¶ 13).

The Superior Court labeled "the second claim that AMO asserts in support of its position" as "agency-protected, confidential information" (Exhibit 10 at 39).  The Court's instructions focused on defendant's role as "both an agent and trustee for AMO and its

---

[2]     On June 9, 2005, in the Supplemental Pretrial Order (Exhibit 9), the Superior Court asked the parties to submit memoranda on the following matters:

> (1) What ongoing responsibilities, if any, did the defendant have to the plaintiff and/or its membership after his resignation from his several positions; and
>
> (2) Can a former agent who held the positions occupied by defendant properly avail himself of confidential information of the sort involved here whether or not the confidential information amounts to a trade secret.

members… in a fiduciary capacity," associated with his position as Executive Vice President of

AMO and as principal trustee of the AMO employee benefit plans (*id.* at 40).   The Court further

instructed the jury that the duties continued after termination of the agency (*id.*) and gave rise to

a separate claim of liability "even though that confidential information does not quality for

protection as a trade secret" (*id.* at 41).   The Court further outlined the "Trustee's Duties after

Termination of Trust" (*id.* at 43), and essentially melded the trade secret and "agency-protected

confidential information" misappropriation tests (*id.* at 44).   The Court also provided the jury a

Special Verdict Form in which misappropriation could be found indistinguishably under either

the trade secret claim or the Court's newly added breach of fiduciary duty/"agency-protected

confidential information" claim (Exhibit 11).

During the jury charge conference, Joseph, through counsel, objected to the jury

instructions which were based on or related to the Court's newly added breach of fiduciary duty

claim.   The Court denied Joseph's objections (Fay Decl. ¶ 14).

## II.    LEGAL STANDARD ON MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is warranted only if it appears beyond doubt that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L.Ed.2d. 80, 78 S.Ct. 99 (1957).   The threshold determination in resolving a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support his or her claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L.Ed.2d 90, 94 S.Ct. 1683 (1984), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 82 L.Ed.2d 139, 104 S.Ct. 3012 (1984).   When challenging the sufficiency of a pleading's allegations of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the standard of review is substantially the same as that used to evaluate Rule 12(b)(6) motions. *See Vanover v. Hantman,* 77 F. Supp. 2d 91, 98 (D.D.C. 1999).   The court must accept as true all of the plaintiff's well-pled factual allegations and draw all reasonable inferences in favor of the plaintiff; however, the court does not need to accept as true the plaintiff's legal conclusions. *See Alexis v. District of Columbia*, 44 F.Supp.2d 331, 336-37 (D.D.C. 1999).

*Consolidated Edison Co. of New York, Inc. v. Spencer Abraham*, No. 04-382 (RMC), 2005 U.S. Dist. LEXIS 5663, *11-12 (D.D.C. March 31, 2005); *see also* Fed.R.Civ.Pro. 12(b)(1), 12(b)(6).

## III.    ARGUMENT

### A.    New Fiduciary Duty Claims Are Subject to Complete Preemption By ERISA and Must Be Dismissed As A Matter Of Law

#### 1.    Common Law Fiduciary Duty Claims Arising From Defendant's Role As Fiduciary To ERISA Plans Is Completely Preempted By ERISA

While Judge Braman purported to add a common law claim for breach of fiduciary duty, such new claim is removable to federal court under the doctrine of complete preemption. The doctrine of complete preemption also requires dismissal of the new claim. As the Supreme Court recently made clear:

> "[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state claim can be removed. *Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 8, 156 L. Ed. 2d 1, 123 S. Ct. 2058 (2003)*. This is so because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Ibid.* ERISA [and the LMRA] is one of these statutes.
>
> . . .
>
> Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted. See *481 U.S., at 54-56, 95 L. Ed. 2d 39, 107 S. Ct. 1549*; *see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143-145, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990)*.
>
> The pre-emptive force of ERISA § 502(a) is still stronger. In *Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987)*, the Court determined that the similarity of the language used in the Labor Management Relations Act, 1947 (LMRA), and ERISA, combined with the "clear intention" of Congress "to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA," established that ERISA § 502(a)(1)(B)'s pre-emptive force mirrored the pre-emptive force of LMRA § 301. Since LMRA § 301 converts state causes of action into federal ones for purposes of determining the propriety of removal, see *Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 20 L. Ed. 2d 126, 88 S. Ct. 1235 (1968)*, so too does ERISA § 502(a)(1)(B). Thus,

the ERISA civil enforcement mechanism is one of those provisions with such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life, 481 U.S., at 65-66, 95 L. Ed. 2d 55, 107 S. Ct. 1542.* Hence, "causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Id., at 66, 95 L. Ed. 2d 55, 107 S. Ct. 1542.*

*Aetna Health Inc. v. Davila*, 524 U.S. 200, ____, 124 S.Ct. 2488, 2495-96 (2004).

Judge Braman's new breach of fiduciary duty claim is expressly predicated upon Joseph's fiduciary duties as a trustee of the AMO Plans, and as executive vice president. *See* Exhibit 10 at 43 ("He was also the lead trustee for the fringe benefits trusts and plans of AMO's members who were the beneficiaries. Although his resignation included the trusts, he nevertheless remained subject to a duty owed to the trusts beneficiaries not to take advantage of the beneficiaries by the use of information acquired by him as trustee or vice president, or to disclose to a third person information which he had acquired as trustee when he knew or should have known that the effect of such disclosure would be detrimental to the interests of the beneficiaries."); *see id.* at 40 ("An agent and trustee both serve in a fiduciary capacity"); *see also id.* at 41 ("rule of law looks. . . to the injury to the fiduciary relationship"). As a trustee of the AMO ERISA Plans, Joseph clearly had fiduciary duties to the beneficiaries that flow directly from federal law. *See e.g.* 29 U.S.C. § 1104. Breaches of such fiduciary duties are clearly enforceable under ERISA. 29 U.S.C. §§ 1109; 1132(a)(2).[3]

---

[3]    It is undisputable that "[c]ommon law breach of fiduciary duty claims are clearly preempted by ERISA." *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999); *see also Lee v. MBNA Long Term Disability & Benefit Plan*, No. 04-3105, 2005 U.S. App. LEXIS 4990, at *36 (6th Cir. March 29, 2005); *Baumgardner v. Smurfit-Stone Container Corp.*, 347 F. Supp. 2d 927, 935 (D.Or. 2004)(preempting common law breach of fiduciary duty claims under ERISA); *Mack v. CTC Ill. Trust Co.*, No. 04-00083, 2004 U.S. Dist. LEXIS 13997, at *9-10 (E.D.Pa. July 19, 2004)(same); *Guardsmark, Inc. v. Bluecross & Blueshield*, 169 F. Supp. 2d 794, 802 (W.D.Tenn. 2001) ("ERISA preempts common law breach of fiduciary duty claims including a beneficiary's state law breach of contract claims against a fiduciary. Claims which merely attach new, state law labels to ERISA claims for breach of fiduciary

Because Judge Braman's new added claim is clearly "within the scope of the civil enforcement provisions of § [1132(a)]" this new claim is "removable to federal court." *Aetna*, 542 U.S. at ____, 124 S.Ct. at 2496, and must be dismissed under the doctrine of complete preemption.

**2.     Properly Removed Breach of Fiduciary Duty Claims
Must Be Dismissed As A Matter Of Law_____**

Once properly preempted by the doctrine of complete preemption, the plain language of ERISA mandates that judgment be entered in Joseph's favor on the breach of fiduciary duty claim. "No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b). The alleged breaches of fiduciary duty occurred after Joseph was removed as a Trustee of the AMO Plans and after he resigned from AMO membership. (Exhibit 10 at 43). Because Joseph cannot be liable for any breach of fiduciary duty that allegedly occurred after he was no longer a fiduciary, AMO's breach of fiduciary claims must be dismissed as a matter of law. *See e.g. Baeten v. Van Ess*, 466 F. Supp. 868, 869 (E.D.Wisc. 1977)(granting summary judgment on fiduciary duty claims arising before bank assumed fiduciary status).

**B.     LMRA Preempts the Court's New Breach of Fiduciary Duty Claim**

The Court's new breach of fiduciary duty claim (as well as the existing DC UTSA) is also preempted by operation of federal labor law, in particular, the Labor Management Relations

---

duty are, of course, preempted as well. 'It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit.'")(citations omitted); *see also* 29 U.S.C. §§ 1101-1114 (creating fiduciary duties for plan fiduciaries); 1132 (creating federal cause of action for breach of fiduciary duties), 1145 (preemption provision – "the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title.").

Act, 29 U.S.C. § 185.  Preemption is mandated because the new breach of fiduciary duty claim will necessarily involve a review and analysis of the terms of the various collective bargaining agreements.

The Supreme Court repeatedly has recognized that Section 301 Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, is part of an important federal labor policy that is paramount to local rules of law. *See Teamsters Local 74 v. Lucas Flour*, 369 U.S. 95, 102-103 (1962); *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957).  Indeed, in enacting Section 301, Congress sought to establish a uniform system of federal law.  "The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute." *Lucas Flour*, 369 U.S. at 103.  Specifically, notwithstanding how a claim may be characterized in the complaint, an action is nevertheless preempted if the claims are "substantially dependent upon analysis of" a Section 301 contract.  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220  (1985).   Indeed, the Supreme Court has noted with regard to Section 301 preemption that:

> Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character.  For 20 years, [the Supreme] court has singled out claims pre-empted *by Section 301 of LMRA* for such special treatment.

*Metropolitan Life Ins. Co. v. Tayler*, 481 U.S. 58, 63-64 (1987) (emphasis added, citation omitted); *see In Re: Glass and Pottery Workers Local 173*, 983 F.2d 725 (6th Cir. 1993); *Desantiago v. Laborers Local 1140*, 914 F.2d 125, 127-28 (8th Cir. 1990); *Pruitt v. Carpenters Local 225*, 893 F. 2d 1216, 1219 (11th 1990); *Hunter Douglas, Inc. v. Local 159*, 714 F.2d 342, 345-46 (4th Cir.  1983).

The preemptive force of Section 301 is so strong and complete that an action which is substantially dependent on analysis of the Section 301 "contract"[4] is preempted even if an otherwise adequate state cause of action may exist. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1963); *see Electrical Workers v. Hechler,* 481 U.S. 851, 859 n.3 (1987). In other words, any such claim, even if characterized in the complaint as completely based upon state law, is considered from its inception to be a preempted federal claim. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987); *see also Smith v. St. Regis Corp.*, 850 F. Supp 1296 (D. Miss. 1994).

In the present case, AMO claim for damages hinges on whether its members "were forced to accept lower benefit levels in recent contract bids as a result of the defendant's use of AMO trade secret information for MEBA" (Exhibit 3 at 3). In order to arrive at AMO's proposed calculation of damages, the finder of fact will be required to review and interpret the terms and conditions of AMO's collective bargaining agreements and CCLs and the reasons why AMO negotiated the collective bargaining agreements it did. *See e.g. United Mine Workers v. Covenant Coal Corp.*, 977 F.2d 895, 899 (4th Cir. 1992)(claim against one company for allegedly interfering with collective bargaining agreement between union and another company preempted by Section 301 because determining interference required analysis of collective bargaining

---

[4]   Collective bargaining agreements include the written collective bargaining agreement and any side letters of agreement incorporated by reference. *See e.g. Aeronautical Industrial Dist. Lodge 91 of the Int'l Assoc. of Machinists and Aerospace Workers v. United Technologies Corp.*, 230 F.3d 569 (2nd Cir. 2000) (Court considered side letters of agreement, incorporated by reference into the collective bargaining agreement, as part of the collective bargaining agreement for all purposes); *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 366 (D.C. 1984)("When a written agreement incorporates a second writing, the two documents must be read together as constituting the contract between the parties."); 11 Williston on Contracts (4th ed.) § 30:25 at 234-35. In this case, the CCL's are clearly and undisputedly incorporated by reference into the various collective bargaining agreements AMO has with its employers. *See* Exhibit 5 specifying that the "Confidential Contribution Letter [is] attached and made part" of the collective bargaining agreement.

agreement); *Milne Employees Assoc. v. Sun Carriers, Inc.*, 960 F.2d 1401, 1412 (9th Cir. 1992) (preempting state tort claims for tortious interference because interpretation of the collective bargaining agreement was necessary). Because of the nature of the damages AMO is seeking, the Court's newly added breach of fiduciary duty claim is so inextricably intertwined with the terms and provisions of collective bargaining agreements (and the CCLs which are incorporated by reference), *i.e.* a Section 301 contract, and as a result are preempted. Hence, the Court's newly added breach of fiduciary duty claim (as well as the pending UTSA trade secrets misappropriation claim) must be dismissed, as a matter of law, based on federal labor law preemption.

C.    **Express Terms of LMRDA Bar Superior Court's New Breach of Fiduciary Duty Claim**

The Superior Court premised its new breach of fiduciary duty claim upon Section 501 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 501. (Fay Decl. ¶ 13). Section 501(a) places a duty on "officers, agents, shop stewards, and other representatives of a labor organization occupy[ing] positions of trust . . . to hold [the union's] money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws." 29 U.S.C. § 501(a). The plain language of this statute only applies a fiduciary duty to the actions of current officers, agents and shop stewards of a union, not the actions of retired officers, agents or shop stewards for events that occurred once they no longer held positions in this union. That is because this statute is specifically designed to hold union officers responsible for their actions in positions of responsibility and to account for the union funds while in office (on the assumption that the officers would not have access to union funds once they leave office). In the present case, Joseph is not accused of misappropriating any alleged trade secrets while he still held any

position with AMO (or any AMO Plans).  Instead, he is accused of misappropriating trade secrets after he was no longer an officer or a member of AMO.  According the plain language of § 501(a), Joseph owed no fiduciary duties to AMO once he was no longer an officer of AMO.  *See Bar-Meir v. Walker*, No. 01-1764 (PAM/JGL), 2002 U.S. Dist. LEXIS 7850, *6 (D.Minn. April 26, 2002)("Although in some circumstances officers of organizations whose membership is voluntary owe the membership various fiduciary duties, see 29 U.S.C. § 501(a) (imposing fiduciary duty on officers of labor organizations), there is no precedent for the proposition that a former officer of an organization such as NADCA owes a specific duty not to defame a member of that organization.").  Hence, Section 501(a) is not a proper legal foundation for any breach of fiduciary duty claim here.

### D.     The DC UTSA Preempts The Newly Added Breach of Fiduciary Duty Claim

Even if not preempted by ERISA or the LMRA, or barred by the LMRDA, the plain language of the District of Columbia Uniform Trade Secret Act preempts Judge Braman's newly added breach of fiduciary duty claims, as a matter of law.  The language of the D.C. Code, with respect to the preemptive effect of the UTSA, states:

(a)     Except as provided in subsection (b) of this section, this chapter supercedes conflicting tort, restitution and other law of the District of Columbia providing civil remedies for misappropriation of a trade secret.

(b)     This chapter does not affect:

1.     Contractual remedies, whether or not based upon misappropriation of a trade secret;

2.     Other civil remedies that are not based upon misappropriation of a trade secret; or

3.     Criminal remedies, whether or not based upon misappropriation of a trade secret.

D.C. Code Ann. § 36-407 (2001 ed.).  The DC UTSA also makes clear that "This chapter shall

be applied and construed to make uniform the law with respect to trade secrets among the

District of Columbia and those states enacting it."  D.C. Code Ann. § 36-408 (2001 ed.).

A January 2005 Wisconsin appellate court decision best summed up the law on UTSA

preemption of fiduciary duty claims when it held:

> We are persuaded by the reasoning of the great majority of courts that have
> construed the preemption provision, and we adopt that approach. We conclude
> that the purpose of Wis. Stat. § 134.90(6) is to make clear that § 134.90 is
> intended to provide a single, uniform standard for the type of information that, in
> the absence of a contract, is entitled to protection from misappropriation under
> civil law. We construe § 134.90(6) to preempt common law claims for
> unauthorized use of confidential information that does not meet the statutory
> definition of a trade secret, as well as common law claims, however denominated,
> that are based solely on allegations or evidence either of misappropriation of a
> trade secret in violation of § 134.90(1) and (2) or unauthorized use of confidential
> information. We conclude that this construction best effectuates the purpose of §
> 134.90(6).
>
> . . .
>
> We conclude the claim that Sokolowski breached his fiduciary duty to Burbank is
> based solely on evidence that he used and disclosed Burbank's customer
> information after the termination of his employment with Burbank. Accordingly,
> that claim and the aiding and abetting claim against United Liquid and United
> Grease are preempted by Wis. Stat. § 134.90(6).  The circuit court therefore
> correctly dismissed both claims.

*Burbank Grease Servs., L.L.C. v. Sokolowski*, 278 Wisc.2d 698, 724, 693 N.W.2d 89, 102 (Wisc.

Ct. App. 2005).

Other courts have reached similar results.  "For our purposes, therefore, [UTSA] replaces

other law relating to the misappropriation of trade secrets, regardless of whether the Plaintiffs

demonstrate that the information at issue qualifies as a trade secret."  *Auto Channel, Inc. v.

Speedvision Network, L.L.C.*, 144 F.Supp.2d 784, 789, 793 (W.D. Ky. 2001) (UTSA preempts

breach of fiduciary duty claims and all other claims relating to misappropriation of trade secrets);

*see Penalty Kick Mgmt. v. Coca Cola Co.*, 318 F.3d 1284, 1297-98 (11th Cir. 2003)(preempting

claims for conversion, breach of a confidential relationship and duty of good faith, unjust enrichment, and quantum meruit under the Georgia UTSA); *Hecny Transportation, Inc. v. George Chu*, No. 98 c 7335, 2004 U.S. Dist. LEXIS 5417, (N.D.Ill. March 31, 2004) (preempting fiduciary duty, tortious interference with contract, fraud claims, and conversion claim under the preemption provisions of the Illinois UTSA); *S&S Computers and Design, Inc. v. Paycom Billing Services, Inc.*, 2001 WL 515260 *3 (W.D. Va. April 5, 2001) ("a claim for breach of fiduciary duty, which is based on the misappropriation of a trade secret, is displaced by" the Virginia UTSA); *see also Milgrim on Trade Secrets*, § 1.01[4], at 1-68.14 (1996)) (Preemption is appropriate where "other claims are no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret misappropriation").

In light of the foregoing legal authority interpreting the preemption provision of the UTSA in other jurisdictions, especially with respect to breach of fiduciary duty claims, the claim newly added by the Superior Court cannot stand, and should be dismissed. AMO, in its amended complaint, did not make any factual allegation that the information at issue in this case is anything other than a trade secret. *See* Amended Complaint ¶ 8, 9, 10, 13, 14. The Superior Court, on its own accord, attempted to make a distinction that not all of the "trade secret" information may qualify as such and amended the case (over defendant's objections) to consider the same allegedly "trade secret" information as generic "confidential information." Regardless, the majority of the courts looks to the underlying claims and determines whether the misappropriation and breach of fiduciary duty claim are based on the same operative facts. In this case, they clearly are. Hence, the Superior Court's newly constructed breach of fiduciary duty claim is clearly preempted by the UTSA, D.C. Code Ann. § 36-407.

E.    **AMO Lacks Standing And the Court Lacks Jurisdiction to
      <u>Entertain AMO's Representational Damages Claims</u>**

AMO seeks damages only on behalf of its members, and has stated that one hundred per

cent of any recovery in this case would go directly to the members.  In addition to damages for

lost wages, AMO also seeks damages for lost employee benefits it asserts would have been

contributed to AMO employee benefit plans but for the actions of Joseph in misappropriating

trade secrets.  AMO also asserted late in the litigation that the alleged trade secrets belong to the

members, not AMO.  Neither the AMO members nor the AMO employee benefit plans,

however, are parties to this suit.

As background only, AMO's representational damages claim relates to a bid made by an

AMO-affiliated ship operating company in 2002 in response to a government request for

proposal (RFP) to operate "LMSR" (large, medium-speed, roll-on/roll-off) ships.  AMO was the

incumbent union providing crews for the ships under a five-year government contract

commencing in 1998.  AMO's affiliated shipping company, Maersk Line Limited, won the

award again in 2002, so the ships remained manned by AMO crews.  Under the award, AMO

initially projected that its crews would obtain a 47% increase in wages and benefits.  Later, AMO

revised this figure upwards.  AMO's damages theory is that the increase in wages with benefits

to its members would have been higher, if it and the other two maritime unions, MEBA (Marine

Engineers' Beneficial Association) and MMP (International Organization of Masters, Mates and

Pilots), had not voluntarily agreed in April 2002 not to apply their "Tripartite Agreement" to the

2002 government bids.  (The Tripartite Agreement was an agreement among the three unions to

charge uniform labor rates in bidding for specified government contracts.)  AMO contends that

Joseph caused the failure of AMO to achieve a higher level of increase in wages and benefits for

its members.

F.     **LMRA Preemption of Damages Claims**

As discussed in previous sections, the LMRA preempts AMO's UTSA damages claim and the newly added breach of fiduciary duty claim because any damages will necessarily require an interpretation of past and present collective bargaining agreements.  This interpretation of collective bargaining agreements directly implicates LMRA § 301 preemption. Hence, AMO's UTSA claim and the newly added fiduciary duty claim must be preempted, as a matter of law.

G.     **No Standing To Raise Claims on Behalf of Members**

Through the actions of the Superior Court shortly before trial (Exhibit 6), AMO seeks damages on behalf of its members on both the fiduciary duty and UTSA claims in a representational capacity on behalf of its members.  Such representational capacity damages claims are not permitted, as a matter of law.

An "association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1207 (D.C. 2002).

1.     **AMO Members Have No Standing To Sue Under The UTSA**

AMO and Judge Braman attempted to justify representational damages claims on behalf of AMO members under the first prong of *Hunt* by asserting that the members, not AMO, own the alleged trade secrets in this case.  This new assertion is supported by nothing except AMO's bare statement.  There are no documents indicating that the alleged trade secrets, including the so-called formulas in the contribution rate sheets, belong to the members.  Indeed, up until AMO

had a last minute change of heart on the matter, one of the arguments it made in this lawsuit was that Joseph's efforts in attempting to keep alleged trade secrets *away* from AMO members showed that AMO had trade secrets of its own to protect.

If AMO members "own" the alleged trade secrets, as AMO now contends, then there is no basis for damages or liability against Joseph under the DC UTSA. Joseph was a member of AMO. Hence, Joseph, along with the other AMO members, allegedly owned the trade secrets. Because Joseph "owned" the trade secret, Joseph could not, under the DC UTSA's definitions, have misappropriated any trade secrets he owns. *See* D.C. Code Ann. §§ 36-401(2)(A) ("Acquisition of a trade secret *of another*")(emphasis added); 36-401(2)(B) ("Disclosure or use of a trade secret *of another*")(emphasis added). Because Joseph cannot be found liable for misappropriating trade secrets he owns, and because AMO cannot sue Joseph on behalf of Joseph, AMO may not seek any damages under D.C. Code Ann. § 36-403.

### 2.     If AMO Members Had Standing, Individual Members Would Need to Participate

Even if AMO members did have standing to sue for trade secret misappropriation (on the assumption that the members actually owned the alleged trade secrets at issue here, despite AMO's pleadings to the contrary), AMO nonetheless lacks standing to seek damages on their behalf under the third prong of *Tilden* Park because individual members must participate in order to be entitled to relief.

A lump sum damages award against Joseph would not adequately protect the interests of the individual AMO members listed. Instead, each AMO member would need to participate to prove the damages each member allegedly personally suffered as a direct and proximate result of Joseph's alleged misappropriation. This is particularly true since there are multiple pay classifications and each AMO member affected worked different hours from the others. Hence,

detailed individualized participation of AMO members would be necessary in order to establish any alleged damages proximately caused by Joseph with respect to each individual AMO member.

Individual members would also need to participate to recover the alleged lost benefits that make up a large portion of the AMO representational damages claim. The employee benefits contributions are made not to AMO or directly to the employee, but to the employee benefit plans. The major plans are trusteed plans (Exhibit 8, ¶4). But the plans, separate legal entities, 29 U.S.C. § 1132(d), are not parties to the lawsuit. The individual members could sue for lost benefits, 29 U.S.C. § 1132(a), but there is no provision for the union to sue on the members' behalf.

**3.    DC UTSA Mandates That Damages May Only Be Awarded to the "Complainant" and No One Else**

The plain language of the DC UTSA's damages provision also undercuts any standing AMO may have to seek damages on behalf of its members or on behalf of any AMO Plan. D.C. Code Ann. § 36-401 (2001 ed.) provides the legal threshold for establishing liability for misappropriation of a trade secret. If liability is separately determined under § 36-401, then, and only then, may the factfinder consider damages under D.C. Code Ann. § 36-403 (2001 ed.) and the court consider injunctive relief under D.C. Code Ann. § 36-402 (2001 ed.). Section 36-403, however, specifically limits damages recoverable to the "complainant" in a DC UTSA case. D.C. Code Ann. § 36-403(a) ("A complainant is entitled to recover damages for misappropriation."). In this case, AMO is the complainant (Exhibit 7, ¶ 2.). However, AMO itself does not claim to have suffered any damages. Because, under the plain language of the DC UTSA, damages are only available to "complainants" and AMO, the "complainant" in this case,

has admittedly not suffered any damages, AMO has no basis to seek damages under D.C. Code Ann. § 36-403(a).

4.      **AMO May Not Assert Members' Section 501 Claims In A Representational Capacity**

Even if 29 U.S.C. § 501(a) were a proper legal foundation for a breach of fiduciary duty or UTSA claim, AMO, on behalf of its members and acting in a representational capacity, still would not have any right to bring an action against Joseph because the prerequisites of 29 U.S.C. § 501(b) have not been met.  Section 501(b) clearly states that members of a union may sue a current union officer for violations of his Section 501(a) fiduciary duties **only when** "the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization."  29 U.S.C. § 501(b).  The failure of AMO to pursue a claim against Joseph is a statutory prerequisite to any LMRDA-based claim by an AMO member.  *See e.g. Commer v. McEntee*, 145 F.Supp.2d 333, 338-39 (S.D.N.Y. 2001)("As a condition precedent to a derivative claim against a union officer under Section 501, a putative plaintiff must first make an actual demand upon the union under Section 501(b), to initiate legal action against the officer.  The demand itself is not sufficient to confer rights upon the putative plaintiff under the statute, as the union must also refuse to take remedial action or to initiate suit within a reasonable period of time after the demand has been made.")(citations omitted); *Hanahan v. Lucassen*, 764 F. Supp. 194, 196 (D.D.C. 1991).  In this case, AMO is the real party in interest and is actually suing Joseph for trade secret misappropriation.  Because AMO has not failed to sue Joseph, AMO members have no right under the LMRDA to bring any legal action predicated, in any way, on 29 U.S.C. § 501(b).  Hence, AMO members have no standing to sue Joseph for trade secret misappropriation or breach of fiduciary duty in their own right.  Because

the only damages AMO seeks in this case are on behalf of its members and because the AMO members have no standing to raise any Section 501 claims of its members, such damages claims must be dismissed as a matter of law.

       5.       **No Standing to Raise Claims On Behalf of AMO Plans**

For reasons similar to those outlined in the previous section, AMO also lacks standing to assert any damages claims on behalf of the various AMO Plans.  Many of the AMO Plans are ERISA plans.  As such, only a "participant", a "beneficiary", a "fiduciary", or the ERISA plan itself is authorized by ERISA, to assert causes of actions against fiduciaries or on behalf of the plans.  29 U.S.C. §§ 1132(a); 1132(d).  AMO, the only plaintiff in this case, is not a "participant" or "beneficiary" as those terms are defined in ERISA.  29 U.S.C. §§ 1002(7) and 1002(8).  In fact, an ERISA plan "may sue or be sued under this subchapter as an entity." 29 U.S.C. § 1132(d).  As such, AMO may not assert any claims on behalf of any of the AMO Plans.

## IV.    CONCLUSION

Based on the foregoing, Jerome E. Joseph respectfully requests that this Court dismiss the newly added breach of fiduciary duty claims and dismiss AMO's representational damages claim.

Dated:  July 11, 2005             Respectfully submitted,

                           **JEROME E. JOSEPH**

                By:        /s/  Michael J. Schrier
                     Raymond C. Fay #188649
                     Michael J. Schrier #444693
                     BELL, BOYD & LLOYD PLLC
                     1615 L Street N.W., Suite 1200
                     Washington, D.C. 20036
                     (202) 466-6300
                     Attorneys for Defendant