# Exhibit 4

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

AMERICAN MARITIME OFFICERS,

CASE NO.: 02-019945 CACE 21

    Plaintiff,

v.

THOMAS E. KELLY,

    Defendant.
_____/

## ORDER DENYING PLAINTIFF'S VERFIED MOTION FOR TEMPORARY INJUNCTION

This matter came before the Court on Plaintiff's Verified Motion for Temporary Injunction and for Temporary Injunction as Requested in the Complaint for Injunctive Relief and Damages. Notice was given to the Defendant and an evidentiary hearing commenced on November 4 2002 at 11a.m. in chambers during which one hour of testimony was submitted; and a continuation of the hearing commenced on January 22, 2003 at 9:30 a.m. during which Plaintiff presented additional testimony. Both parties submitted memoranda of law on the issue.

In essence this case is brought by the Plaintiff American Maritime Officers (AMO) seeking to prohibit Defendant Thomas Kelly (Kelly), a former employee, from disclosing information alleged to have been obtained from AMO during his employment, to his new employer, National Marine Engineers Beneficial Association (MEBA). The parties agree that Kelly did not sign a non-compete agreement during his tenure with AMO nor did he sign a confidentiality agreement, nor are such requirements contained in the governing bylaws and constitution of the AMO.

DEFENDANT'S EXHIBIT 4

Plaintiff AMO is a maritime union that represents employees of shipping companies. AMO negotiates contracts with those shipping companies on behalf of the employees AMO represents. The rates of pay and fringe benefits contained in those agreements become important to the shipping companies for purposes of bidding for government contracts. Similarly, MEBA is another maritime union, which also represents employees of shipping companies and also negotiates contracts with those companies.

Defendant Kelly served AMO in various capacities during his 25-year tenure with AMO, including serving as Trustee of the AMO fringe benefit plans, as an elected officer and paid employee of AMO. In the fall of 2001 he lost his bid for reelection and in December of 2001 he was terminated from his paid position. He started a consulting firm. It is Kelly's consulting work for MEBA that AMO seeks to enjoin, as well as to enjoin Kelly from "using AMO's Confidential Information and revealing it to others."

At the heart of the AMO's case is its contention that its wage and fringe benefit information is a trade secret. AMO contends that its "confidential contribution letter" and its "rate sheet" constitute specialized information which falls under the coverage of Florida's trade secret statute. The "confidential contribution letter" simply sets forth an agreement with an employer as to how many vacation days an employee will be entitled to and then sets forth contribution rates to the various fringe benefit funds. Several examples were submitted into evidence and each had different vacation days and contribution rates. The "rate sheet" is a list of vacation day entitlements ranging from 0 to 30, and the contributions that go with each vacation entitlement.

AMO admits that there are a number of places that the information contained in the confidential contribution letter can be obtained, such as from the various trust funds to which

contributions are submitted as well as off of the official website of the Military Sealift Command, an official U. S. Navy website.[1] AMO also agrees that Kelly had access to this information in his capacity as a trustee of the various trust funds to which the contributions were submitted, just as other union and employer trustees would have access to the same. Notwithstanding the availability of the "confidential contribution letters" AMO insists that the "rate sheet" provides all the information needed to know what its agreements are with each of its employers, simply by determining how many vacation days an employee gets. It is therefore the rate sheet with its formula based on vacation days that AMO claims is the trade secret. AMO, through its witness Mr. Bethel, produced two examples of contribution agreements. However, when comparing the rate sheet to the agreements, there were variations. Thus the rate sheet does not necessarily provide the key to each employer agreement.

In order to obtain a temporary injunction, a party must prove the following: (1) that it will suffer irreparable harm unless the status quo is maintained; (2) that it has no adequate remedy at law; (3) that it has a substantial likelihood of success on the merits; and (4) that a temporary injunction will serve the public interest." Yachting Promotions, Inc. v. Broward Yachts, Inc., 792 So. 2d 660, 663 (Fla. 4th DCA 2001) (citing Infinity Radio, Inc. v. Whitby, 780 So. 2d 248, 250 (Fla. 4th DCA 2001)). The moving party also must have a clear legal right. Id. (citing In re Estate of Barsanti, 773 So. 2d 1206, 1208 (Fla. 3d DCA 2000); Weinstein, 758 So. 2d 705, 706 (Fla. 4th DCA 2002) (substituting demonstration of clear legal right for third prong of injunction test requiring substantial likelihood of success on the merits)). "'Clear, definite, and unequivocally sufficient factual findings must support each of these four criteria before the court may enter the injunction." Aerospace Welding, Inc. v. Southstream Exhaust & Welding, Inc., 824 So. 2d 226

---

[1] Bethel asserts that the "confidential" letter found at the website must have been a mistake on the part of the Military Sealift Commander.

3

(Fla. 4th DCA 2002) (quoting City of Jacksonville v. Naegele Outdoor Adver. Co., 634 So. 2d 750, 754 (Fla. 1st DCA 1994)); Yachting Promotions, 792 So. 2d at 663.

Plaintiff has failed to demonstrate that it is likely to prevail on the merits in this case. AMO relies on Florida Statute 688, asserting that the confidential contribution letters and rate sheet are a trade secret. A trade secret is "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) derives independent economic value, actual or potential, from not being generally known, to and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Plaintiff's have not convinced this Court that the wage and benefit information, which are the subjects of negotiations, and which are accessible to a variety of persons, and a rate sheet which is not consistently applied, constitute trade secrets and as such this Court is not convinced that the Plaintiff is likely to succeed at trial.

Moreover with respect to AMO's claim of tortious interference, assuming such applies in the context of union organizing, it is clear in Florida that a former employee is free to compete against a former employer (absent a non-competition agreement to the contrary). In addition, tort law does not create a general immunity from competition. Instead, it is only direct and unjustified interference that is actionable. Harllee v. Professional Service, Inc., 619 So. 2d 298, 300 (Fla. 3d DCA 1992). A showing of an intentional and unjustified interference with an existing business relationship that causes damage to the plaintiff establishes a prima facie case, and the burden then shifts to the defendant to justify that interference. If the defendant can prove that the interference was lawful competition—a privilege the courts recognize when the contract is terminable at will—the defendant will not be found to have committed the tort of wrongful

business interference. <u>Unistar Corp. v. Child</u>, 415 So. 2d 733, 734-735 (Fla. 3d DCA 1982) (citing W. Prosser <u>Law of Torts</u>, § 129 at 932, 946 (4th ed. 1971)). Kelly had no non-competition agreement with his now former employer, AMO. The acts AMO complains of all occurred after Kelly's relationship with AMO was terminated.

AMO has not alleged any specific economic value to the alleged confidential information or any specific harm it has or may suffer. To the contrary, the testimony presented was that AMO won the two RFPs it submitted in the year 2002. AMO has not demonstrated a threat of irreparable harm. Given the speculative nature of the harm and the Plaintiff's inability to show a substantial likelihood of success on the merits, the request for injunctive relief must be denied.[2]

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Temporary Injunction be and the same is hereby denied.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida on January _____ 2003.

MIETTE K. BURNSTEIN

JAN 2 9 2003

A TRUE COPY
HONORABLE MIETTE K. BURNSTEIN

Copies furnished:
Philip E. Ward, Esquire
Kathleen M. Phillips, Esq.

---

[2] It should be pointed out that on facts almost identical to these, the AMO was also denied a preliminary injunction with respect to former employee Jerome Joseph. See <u>American Maritime Officers v. Jerome Joseph</u>, Case No. 02 CA 7178, Superior Court of the District of Columbia, Civil Division, decision rendered by Judge Stephanie Duncan-Peters dated December 19, 2002.

5