# EXHIBIT 5

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

|  |  |
|---|---|
| AMERICAN MARITIME OFFICERS,<br><br>      Plaintiff,<br><br>v.<br><br>JEROME E. JOSEPH,<br><br>      Defendant. | )<br>)  **FILED UNDER SEAL--**<br>)  **PURSUANT TO STIPULATED**<br>)  **PROTECTIVE ORDER**<br>)<br>)  Civil Action No. 02ca7178<br>)  Calendar 4 – Civil I<br>)  Judge Herbert B. Dixon, Jr.<br>)  Next Event: September 12, 2003<br>)  Status Conference<br>) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
SECOND RENEWED MOTION FOR SUMMARY JUDGMENT**

Edward P. Henneberry (D.C. Bar No. 224162)
Stephen Weissman (D.C. Bar No. 451063)
Hugh B. Stuart (D.C. Bar No. 431876)
HOWREY SIMON ARNOLD & WHITE, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800

Attorneys for Plaintiff
AMERICAN MARITIME OFFICERS

Dated: August 25, 2003



PLAINTIFF'S EXHIBIT 5

For the same reasons, Joseph's contention that 29 U.S.C. § 1024(b) requires AMO to provide its members with a copy of the Confidential Contribution Letter "without any restriction" on subsequent use by the member (see Renewed SJ Mem. at 22) is erroneous and contrary to Joseph's own actions. Like 29 U.S.C. § 414, the DOL is the governmental agency that administers 29 U.S.C. § 1024(b)—and, as indicated, it has agreed that any review of the Confidential Contribution Letter should be done according to the confidentiality policy established by AMO. Thus, Joseph's contention that federal labor law "preempts" AMO's claim of trade secret status for its Confidential Contribution Letters not only contradicts Joseph's own statements and conduct, but disregards the DOL's determination and agreement that the Confidential Contribution Letter is, indeed, a trade secret.

Similarly, Joseph's assertion that all of AMO's trade secrets are available from the MSC web site and under the Freedom of Information Act ("FOIA") badly misstates the facts. Joseph has admitted that the AMO Contribution Rate Schedule, including its formula, is <u>not</u> publicly available. Joseph Dep. at 143-45; <u>see also</u> Bethel Dep. at 116, 122. Likewise, he candidly concedes that <u>no</u> AMO Confidential Contribution Letter prepared in connection with commercial contracts has ever been made publicly available, on any web site, through FOIA, or otherwise. Joseph Dep. at 109, 184-85; <u>see also</u> Bethel Aff. ¶ 25. Thus, his claim that AMO Contribution Letters are "publicly available" through the MSC and FOIA solely boils down to three prior Confidential Contribution Letters that the MSC recently posted on its web site in connection with expiring government contracts for which an AMO-contracted company was the incumbent.[19] Joseph agrees that AMO Confidential Contribution Letters should not be posted on the MSC web site or made available through FOIA (Gallagher Dep. at 76), <u>see</u> 5 U.S.C. § 552(b)(4) (exempting from FOIA disclosure any "trade secrets and commercial or financial information obtained from a person and privileged or confidential"), and AMO has taken steps directly to

---

[19] Notwithstanding Joseph's counsel's suggestion to the contrary, the <u>same</u> three Confidential Contribution Letters that were recently posted on the MSC web site were the ones made available through FOIA.

have MSC cease and desist from any further disclosure of Confidential Contribution Letters. See Bethel Aff. ¶ 25. Joseph testified that he was "surprised and shocked" that these three letters appeared on the MSC web site. Joseph Dep. at 105.[20] Clearly, that three expiring Confidential Contribution Letters have been made public (and improperly so) does not mean that its other Confidential Contribution Letters, including those prepared in connection with commercial contracts and other RFPs, are not entitled to trade secret status.

Finally, Joseph's argument that AMO failed to take reasonable steps to secure its trade secrets due to AMO's lack of a formal, written confidentiality agreement with its officers, employees, and members is contrary to law. See Joseph's Renewed SJ Mem. at 28. The decided cases under the UTSA have held that the lack of a formal confidentiality agreement between an employer and its employees is not determinative of whether the company took reasonable steps to ensure the secrecy of trade secrets. See Ulico Cas. Co. v. Professional Indem. Agency, Inc., 1999 U.S. Dist. LEXIS 8591, *15 (D.D.C. May 5, 1999) (rejecting defendant's argument that the absence of confidentiality and non-compete agreements are sufficient to demonstrate lack of reasonable efforts to maintain the secrecy of trade secret information); Swift Bros. v. Swift & Sons, Inc., 921 F. Supp. 267, 277 (E.D. Pa. 1995) (cited with approval by the Ulico court). To the contrary, "confidential relationships do not have to be expressly established, but instead may

---

[20] Joseph's suggestion that Mr. Bethel knew about these few postings when AMO filed its opposition to Joseph's first motion for summary judgment in November 2002 (see Joseph's Memo in Support at 25 n.7) is baseless. AMO thoroughly reviewed the MSC web site before opposing Joseph's first motion for summary judgment, and no Confidential Contribution Letters were located. Bethel Aff. ¶ 25. It also conducted a diligent investigation to determine whether any Confidential Contribution Letters had ever been posted on the MSC web site, but did not learn of any until January 2003. Id. Indeed, if they had been posted when Joseph initially moved for summary judgment, he presumably would have attached copies of any such postings to his summary judgment briefs, including his reply brief. But he did not because none were posted. If Joseph, the lead AMO contract negotiator for more than twenty years, was "surprised and shocked" to have recently learned that a few Confidential Contribution Letters had appeared on the MSC web site, Mr. Bethel, his replacement, cannot be faulted for his lack of knowledge on the issue, particularly after his diligent investigation and given the paucity of letters that have ever actually been posted on the MSC web site.

be implied" when the facts suggest a special relationship was involved. <u>Ulico</u>, 1999 U.S. Dist. LEXIS 8591, at *15 (quoting <u>Default Proof Credit Card Sys., Inc. v. State Street Bank & Trust Co.</u>, 753 F. Supp. 1566, 1573 (S.D. Fla. 1990)). Here, it cannot be seriously disputed that Joseph had a duty of loyalty to AMO and its membership by virtue of his status as both an officer[21] and Trustee,[22] and that he now has a legal obligation not to use any confidential information derived from AMO. <u>See</u> <u>Group Association Plans, Inc. v. Colquhoun</u>, 151 U.S. App. D.C. 298, 466 F.2d 469, 473-74 (D.C. Cir. 1972) (holding that the nature of the employer-employee relationship is essentially fiduciary in nature and that a former employee must not use confidential information gained from his employment against his former principal); <u>Bond</u>, 732 A.2d at 977 ("'as a general rule, a former employee is obligated not to disclose or use the confidential information acquired during his employment'") (citations omitted). As shown above, the confidentiality policies implemented by AMO (including Joseph) are more than sufficient to establish a trial issue of fact concerning the reasonableness of AMO's steps to secure all of its trade secrets. <u>See</u> Order of Dec. 19, 2002, at 6-7.

### 3. Specifics of the Financial Health and Status of AMO Plans

Finally, Joseph's own testimony establishes that the specifics of the financial health and status of AMO Plans are cognizable trade secrets under the UTSA. He testified in this case that the funding levels of AMO benefits Plans are "absolutely" confidential. Joseph Dep. at 195. Confirming the economic value of such information, he further acknowledged that the funding "status of the [AMO Plans] would be <u>useful to competitors</u> as to know that the plan's in trouble and [AMO] might have to charge more money for it" in contract negotiations." <u>Id.</u> (emphasis added). Contrary to Joseph's bald assertions that AMO has not identified what information

---

[21] <u>See</u> 29 U.S.C. § 501 (establishing "fiduciary responsibility of officers of labor organizations").

[22] Joseph Dep. at 194 (Joseph admits that, as a Trustee, he occupied a "fiduciary" status).